UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HANA DURASEVIC, ET AL.,

Plaintiffs,

v.

GRANGE INSURANCE COMPANY OF
MICHIGAN,

Defendant.

_____/

Case No. 17-cv-12075

UNITED STATES DISTRICT COURT
JUDGE
GERSHWIN A. DRAIN

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#25] AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [#24]

### I. INTRODUCTION

Presently before the Court is Plaintiffs Hana Durasevic and Doka Durasevic's complaint against their insurance company, Grange Insurance Company of Michigan. Plaintiffs bring the present action alleging that Defendant is liable for insurance coverage for damage to their home. Plaintiffs filed a Motion for Partial Summary Judgment asserting Defendant's liability to provide them coverage. Defendant filed a Motion for Summary Judgment asserting that this Court should dismiss the entire action. For the reasons stated below, this Court will grant Defendant's Motion for Summary Judgment and deny Plaintiffs' Motion for Partial Summary Judgment.

## II. FACTUAL BACKGROUND

This action arises from a dispute about insurance coverage for fire damage to Plaintiffs' home. On September 29, 2015, Plaintiffs submitted a claim to Defendant for fire damage to their house. Dkt. No. 25, pg. 4 (Pg. ID 310). Defendant issued $619,029.98 to Plaintiffs to cover expenses from the fire damage, paying money for coverage identified as Dwelling, Contents, Additional Living Expenses, Dwelling Expenses, and Contents Expenses. Dkt. No. 25-2, pg. 2 (Pg. ID 341). Defendant paid for Plaintiffs' temporary housing after the September 29, 2015 fire. Dkt. No. 25, pg. 8 (Pg. ID 314).

On April 29, 2016, a second fire occurred at Plaintiffs' original home, where the first fire occurred. Dkt. No. 25-2, pg. 2 (Pg. ID 341). At the time of the second fire, Plaintiffs still lived in temporary housing. Dkt. No. 25, pg. 8 (Pg. ID 314). Defendant paid $30,548.14 for the April 29th fire, paying money for coverage identified as Additional Living Expenses and Dwelling Expenses. *Id.* Defendant retained Kevin G. Pike, a senior fire investigator, to investigate the origin of the second fire. Dkt. No. 25-3, pg. 2 (Pg. ID 344). Mr. Pike concluded that someone started the fire intentionally. *Id.* at pg. 21 (Pg. ID 363). Mr. Pike's investigation also found that there was no forced entry into the home. Dkt. No. 5-2, pg. 9 (Pg. ID 95). Defendant conducted an investigation and found that Niko Durasevic, Plaintiffs' son, was at the residence just a few hours before the fire. *Id.* Therefore,

Defendant concluded that it was more likely than not that Niko Durasevic intentionally started the April 29, 2016 fire.[1] *Id.* As a part of Defendant's investigation, Defendant made repeated requests to Plaintiffs to produce financial records, phone records, and Facebook archives. Dkt. No. 5-2, pg. 8 Pg. ID 94). Plaintiff failed to produce the requested documentation and information so Defendant could properly investigate the claim. *Id.* Defendant also attempted to conduct examinations under oath ("EUOs") with Plaintiffs and their family members living with them as part of its investigation. *Id.* Insured persons Niko and Samantha Durasevic failed to submit to EUOs. *Id.* Insured persons Doka, Hana, and Viktor Durasevic submitted to EUOs, but failed to sign their EUO transcripts. *Id.*

On February 24, 2017, Defendant wrote Plaintiffs a letter stating why Plaintiffs' policy did not provide total coverage for their claim resulting from the April 29 fire. Dkt No. 5-2. The letter stated the following reasons for denying coverage: 1) Plaintiffs were vacant from the house for 60 days immediately

---

[1] On October 25, 2016, Niko Durasevic was charged with second degree arson under M.C.L. § 750.73 in the 6th Judicial Circuit Court. Case number 2016-003873-FH. On September 28, 2016, the State dismissed this charge. The State also charged Mr. Durasevic with Felony Attempted Breaking and Entering Without Breaking With Intent under M.C.L. § 750.111(A). Niko pleaded guilty to Entering Without Breaking on September 28, 2017; the court sentenced him on November 15, 2017.

preceding the fire; 2) some of the insured persons under the policy failed to provide sworn testimony at an EUO; 3) Plaintiffs failed to respond to repeated requests for documentation supporting the claim; 4) the evidence demonstrated that it was more likely than not that Niko Durasevic started the fire; and 5) Plaintiffs concealed Niko's involvement with the fire. *Id.* at pgs. 7–9 (Pg. ID 93–95).

On May 15, 2017, Plaintiffs filed the present action in the Macomb County Circuit Court. Dkt. No. 1-4. On June 26, 2017, Defendant removed the action to this Court. Dkt. No. 1. Plaintiffs then filed their Motion for Partial Summary Judgment on April 26, 2018. Dkt. No. 24. In their Motion, Plaintiffs request that this Court strike several of Defendant's affirmative defenses and hold Defendant liable for coverage of the April 29, 2016 fire. *Id.* Defendant responded to the Motion on May 17, 2018. Dkt. No. 29. Plaintiffs replied on May 25, 2018. Dkt. No. 31. On April 26, 2018, Defendant filed its Motion for Summary Judgment. Dkt. No. 25. Defendant asserts that this Court should dismiss the entire action because Plaintiffs failed to comply with its policy conditions. *Id.* Plaintiffs responded to the Motion on May 17, 2018. Dkt. No. 28. Defendant replied on May 31, 2018. Dkt. No. 33.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment. The Rule states, "summary judgment shall be granted if 'there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). "All factual inferences 'must be viewed in the light most favorable to the party opposing the motion.'" *Id.* (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV. DISCUSSION

### A. Defendant's Motion for Summary Judgment

Plaintiffs' and Defendant's Motions contain overlapping issues. This Court will address Defendant's Motion for Summary Judgment first. The Court will then apply its conclusions to Plaintiffs' Motion for Partial Summary Judgment to the extent they are applicable.

Defendant asserts three reasons why this Court should grant summary judgment in its favor. First, Plaintiffs' insurance policy excludes coverage for damage resulting from intentionally set fires if the dwelling was vacant for the 60

days immediately preceding the fire. Dkt. No. 25, pg. 2 (Pg. ID 308). Second, Plaintiffs' policy requires insured persons to provide sworn testimony at an EUO; Niko and Samantha Durasevic are insured persons who failed to submit to EUOs. *Id.* Third, Plaintiffs' policy requires insured persons to cooperate with its investigation and produce documents, and Plaintiffs failed to produce requested documentation. *Id.*

## 1. Argument One

First, Defendant argues that it is entitled to summary judgment because Plaintiffs' insurance policy excludes coverage for loss or damage resulting from intentionally set fires if the dwelling was vacant for the sixty days immediately preceding the fire. Dkt. No. 25, pg. 2 (Pg. ID 308). Plaintiff contends that their home was not vacant because the definition of vacant means that a dwelling is lacking both animate and inanimate objects. Dkt. No. 24, pg. 4 (Pg. ID 183). Plaintiffs' home was not empty of inanimate objects at the time of the second fire. *Id.* Alternatively, Plaintiff argues that Defendant is estopped from asserting the vacancy exclusion because Defendant was paying Plaintiffs to live elsewhere and knew that Plaintiffs were not living at their home at the time of the fire. Dkt. No. 28, pg. 2 (Pg. ID 426).

### a. Vacancy

Plaintiffs' insurance policy with Defendant states the following:

B. . . . .[W]e do not insure for loss . . . caused directly or indirectly by any of the following:
Exclusion B.4. is removed and replaced with the following:
4. Vandalism or malicious mischief, including intentionally set fires, if the dwelling has been vacant for more than 60 consecutive days immediately preceding the loss. A building under construction is not considered vacant.

Dkt. No. 5-1, pg. 21, 41 (Pg. ID 61, 81). Plaintiffs' policy also states that

"intentional acts" means "loss resulting from an action by or at the direction of any

insured person committed with the intent to cause a loss, or where the results of

such action are reasonably foreseeable and cause a loss." *Id.* at pg. 20 (Pg. ID 60).

After the first fire occurred at Plaintiffs' home on September 29, 2015,

Defendant paid for Plaintiffs to reside in temporary housing. Dkt. No. 25, pg. 8

(Pg. ID 314). According to the EUO testimony of Mr. Durasevic, Plaintiffs have

not lived in their original home since the first fire. *See* Dkt. No. 25-4, pgs. 4–6 (Pg.

ID 409–11). Additionally, Plaintiffs have not started any construction work on

their original home since the first fire happened. *Id.* at pg. 6 (Pg. ID 411).

Defendant conducted an investigation after the April 29, 2016 fire. Dkt. No. 25-3,

pg. 2 (Pg. ID 344). Defendant retained Kevin G. Pike, a senior fire investigator, to

investigate the origin of the fire. *Id.* Pike concluded that someone started the fire

intentionally. *Id.* at pg. 21 (Pg. ID 363). Defendant conducted an investigation and

also found that Niko Durasevic, Plaintiffs' son, was at the residence just a few hours before the fire. Dkt. No. 5-2, pg. 9 (Pg. ID 95). Therefore, Defendant concluded that it was more likely than not that Niko Durasevic intentionally started the April 29, 2016 fire. *Id.* Based on the aforementioned information, Defendant asserts that it is not required to provide coverage because the second fire was intentional and Plaintiffs' home was vacant for the sixty days immediately preceding the fire. *See* Dkt. No. 25, pg. 8 (Pg. ID 314).

Plaintiffs cite *McNeel v. Farm Bureau General Insurance Company of Michigan* for the definition of the word "vacant." 795 N.W.2d 205, 215 (Mich. Ct. App. 2010). In *McNeel*, the insurance contract provision at issue stated that there was no coverage "[w]hile a described building, whether intended for occupancy by owner or tenant, is *vacant* beyond a period of sixty consecutive days or is *unoccupied* beyond a period of six consecutive months." *Id.* (emphasis added). The contract did not define the term "unoccupied." *Id.* at 214. The court found that since the policy "clearly separate[d] the terms 'vacant' and 'unoccupied' into different clauses with distinct time requirements," the words had different meanings. *Id.* at 215. The court then noted that:

> [M]ost authorities have distinguished the terms "vacant" and "unoccupied." The term "vacant" has been construed to mean empty, deprived of contents, and without inanimate objects. It implies entire abandonment, and non-occupancy for any purpose. On the other hand "unoccupied" has been held

> to mean without animate objects, and implies that no actual use is being made of the premises by anyone corporeally present or in possession.

*Id.* (quoting 45 CJS, Insurance, § 1002, p. 467). Plaintiffs thus assert that the term "vacant" means that a building is void of both animate and inanimate objects. Dkt. No. 24, pg. 4 (Pg. ID 183). Plaintiffs' home contained inanimate objects at the time of the fire, including furniture, appliance, and other items of personal property. *Id.* Therefore, Plaintiffs argue that their home was not vacant under the policy and the vacancy exclusion does not apply. *Id.*

The court in *McNeel* found that the terms "vacant" and "unoccupied" were different because the insurance policy provision used the terms in different clauses, which had distinct requirements. Thus, the terms clearly had different meanings. Here, the relevant provision of Plaintiffs' insurance policy does not include the terms "vacant" and "unoccupied" together. Terms of a contract "must be interpreted in the context of the contract in which they appear." *Vushaj v. Farm Bureau Gen. Ins. Co. of Mich.*, 773 N.W.2d 758, 760 (Mich. Ct. App. 2009). Therefore, the definition of the term "vacant" in Plaintiffs' insurance policy should not be construed in the same manner as the *McNeel* court construed the term. The Michigan Court of Appeals has held that the term "vacant" means "not routinely characterized by the presence of individuals." *Vushaj v. Farm Bureau Gen. Ins. Co. of Mich.*, 773 N.W.2d 758, 760 (Mich. Ct. App. 2009). When interpreting an insurance policy, the *Vushaj* court determined that "[a]ny reading of the [insurance

policy] results in the conclusion that the purpose of the provision in question is to protect the insurance company from the risk that accompanies insuring a house that does not have an occupant." *Id.*

Similarly, here, any reading of Plaintiffs' insurance provision results in the conclusion that the purpose of the vacancy exclusion is to protect Defendant from the risk of insuring a house without a human occupant. Therefore, this Court will construe the term "vacant" like the *Vushaj* court construed it, to mean "not routinely characterized by the presence of individuals." As previously stated, Plaintiffs' home was devoid of human occupants for six months preceding the second fire. *See* Dkt. No. 25-4, pgs. 4–6 (Pg. ID 409–11). Additionally, Plaintiffs have not started any construction work on their original home since the first fire happened. *Id.* at pg. 6 (Pg. ID 411). Therefore, Plaintiffs' home was vacant under the terms of their insurance policy provision.

Although Plaintiffs' house was vacant, the record presents a factual issue about whether the second fire was intentionally set. The vacancy exclusion states that Defendant does not cover loss for "intentionally set fires, if the dwelling has been vacant for more than 60 consecutive days immediately preceding the loss." Dkt. No. 5-1, pg. 21, 41 (Pg. ID 61, 81). Language in the policy on the prior page of the contract states that "intentional acts" means "loss resulting from an action by or at the direction of any insured person committed with the intent to cause a loss,

or where the results of such action are reasonably foreseeable and cause a loss." *Id.*
at pg. 20 (Pg. ID 60). The coverage position letter Defendant wrote to Plaintiff also
defines an intentional act in the same manner. Dkt. No. 5-2, pg. 9 (Pg. ID 95).
Therefore, an intentionally set fire is a fire that is set by an insured person with the
intent to cause a loss of where the results of action will foreseeably cause a loss.
The policy defines an insured person as:

> a. you;
> b. your relatives residing in your household; and
> c. any other person under the age of 21 residing in your household who is in
> your care or the care of a resident relative.

Dkt. No. 5-1, pg. 10 (Pg. ID 50). It is not disputed that Niko Durasevic is an
insured person under Plaintiffs' insurance policy because he is the son of the
Plaintiffs and he resided in Plaintiffs' household. Defendant's investigation found
that Niko Durasevic was at the residence just a few hours before the fire. Dkt. No.
5-2, pg. 9 (Pg. ID 95). The Senior Fire Investigator Mr. Pike also concluded that
there was no evidence of forced entry prior to the fire. *Id.* Therefore, Defendant
concluded that it was more likely than not that Niko Durasevic intentionally started
the April 29, 2016 fire. *Id.* However, Niko's presence a few hours before the fire
presents only circumstantial evidence that he intentionally set the fire. A
reasonable juror could conclude that Niko did not start the fire, as the record only
contains circumstantial evidence coupled with Defendant's self-serving

conclusions.[2] So, a reasonable juror could conclude that the fire was not set intentionally. For these reasons, there is a genuine dispute of material fact about whether the vacancy exclusion is applicable because there is a fact issue about whether the fire was intentionally set—that is, whether Niko Durasevic set the fire.

### b. Estoppel

Plaintiffs argue that, assuming this Court finds the vacancy exclusion applies, Defendant is estopped from asserting this defense because Defendant paid for Plaintiffs to live in temporary housing after the first fire. Dkt. No. 28, pg. 2 (Pg. ID 426). This Court found that there is a genuine issue of material fact about whether the vacancy exclusion applies. However, even this Court had found the vacancy exclusion applicable, Plaintiffs' estoppel argument is misplaced.

> [F]or equitable estoppel to apply, a plaintiff must establish (1) that the defendant's acts or representations induced plaintiff to believe that the policy was in effect at the time of the accident, (2) that the plaintiff justifiably relied on this belief, and (3) that plaintiff was prejudiced as a result of his belief that the policy was still in effect."

---

[2] The State charged Niko Durasevic with second degree arson, but it later dismissed this charge. The Court also notes that Niko and Samantha Durasevic never submitted to EUOs, which could have provided Defendant with clear evidence that Niko started the fire. However, even if Niko and Samantha had submitted to EUOs, it is unclear whether their testimony would have proven that Niko started the fire intentionally. Therefore, this Court finds that questions of fact still preclude summary judgment on this issue.

*Morales v. Auto-Owners Ins. Co.*, 582 N.W.2d 776, 780 (Mich. 1998). Here, there is no question that Defendant's insurance policy was in effect at the time of the second fire. Defendant concedes that the policy was in effect at the time of the fire. Dkt. No. 29, pg. 7 (Pg. ID 461). Case law cited by Plaintiffs to show that equitable estoppel applies is inapt for the present case. *See Song Yu v. Farm Bureau Gen. Ins. Co. of Mich.*, No. 331570, 2017 WL 1337481, at *2 (Apr. 11, 2017). In *Song Yu*, the issue before the court was whether the plaintiffs' insurance policy was in effect. *Id.* The *Song Yu* court held that the insurance company was estopped from denying coverage because the company cancelled the plaintiffs' policy but retained the premium for the time period in which the loss occurred. *Id.* As mentioned, there is no question that Plaintiffs' insurance policy was still in effect at the time of the second fire. The issue before this Court is whether Defendant is liable for complete coverage stemming from the fire damage. Estoppel is thus inapplicable regarding the issue before this Court.

## 2. Argument Two

Second, Defendant argues that it is entitled to summary judgment because Plaintiffs' insurance policy requires insured persons to provide sworn testimony at an EUO as a condition precedent to providing coverage. Dkt. No. 25, pg. 2 (Pg. ID 308). Niko and Samantha Durasevic are insured persons who failed to provide sworn testimony at an EUO. *Id.*

Plaintiffs' insurance policy states that "[i]f a covered loss occurs, the insured person must . . . submit to examinations under oath by any person named by us, while not in the presence of any other insured person, and sign the transcript of the examinations . . . ." Dkt. No. 5-1, pg. 24 (Pg. ID 64). An insured person is:

a. you;
b. your relatives residing in your household; and
c. any other person under the age of 21 residing in your household who is in your care or the care of a resident relative.

*Id.* at pg. 10 (Pg. ID 50). The policy also states, "[i]n return for your premium payment and your compliance with all of the provisions of this policy, we agree to provide insurance subject to all the terms of this policy." *Id.* Lastly, the policy reads, "[w]e may not be sued unless there is full compliance with all the provisions and conditions of this policy." *Id.* at pg. 42 (Pg. ID 82). Defendant argues that it is entitled to summary judgment because not all of the insureds submitted to an EUO. Dkt. No. 25, pg. 2 (Pg. ID 308).

Plaintiffs concede that Niko and Samantha Durasevic—insureds under the insurance policy—did not submit to an EUO. *See* Dkt. No. 28, pg. 3 (Pg. ID 427). However, Plaintiffs state that the innocent co-insured doctrine precludes denial of coverage to one insured based upon the conduct of another insured. *Id.* at pg. 2 (Pg. ID 426). Further, Plaintiffs assert that Michigan follows the substantial performance of a contract rule. *Id.* at pg. 3 (Pg. ID 427). Plaintiffs argue that

whether or not there was substantial performance of a contract is a question of fact for the jury. *Id.*

Plaintiffs argue that this Court should not preclude their recovery from Defendant due to Niko and Samantha Durasevic's failure to submit to EUOs. Dkt. No. 28, pg. 2 (Pg. ID 426). They cite *Gordon v. St. Paul Fire and Marine Insurance Company* for their position. 163 N.W. 956 (Mich. 1917).

In *Gordon*, the plaintiff's home sustained fire damage and her insurance provider denied coverage for the fire because the plaintiff did not submit to an EUO. *Id.* at 957. The plaintiff's policy required her to submit to an EUO as a condition for her to file suit against the insurer. *Id.* Plaintiff's attorney could not attend the EUO on the day that it was scheduled, and the plaintiff refused to submit to the EUO in the absence of her attorney. *Id.* Plaintiff's attorney wrote the insurance company and stated that he would be happy to arrange another EUO for the plaintiff. *Id.* However, neither party made any further attempt to schedule the EUO. *Id.* The Michigan Supreme Court found that the plaintiff had the right to be examined in the presence of her attorney. *Id.* The court further reasoned that plaintiff's request to have her attorney present during the EUO did not amount to a refusal to submit to the EUO. *Id.* Therefore, the court held that the plaintiff's failure to submit to the EUO did not preclude her right to recovery. *Id.*

In this case, it is uncontested that Niko and Samantha Durasevic failed to submit to EUOs. There is no evidence to suggest that Niko and Samantha did not submit to EUOs because their attorney was unable to attend. Therefore, *Gordon* is not applicable to the present case.

No other case law stands for the proposition that the innocent co-insured doctrine applies to a plaintiff's failure to submit to an EUO.[3] *See Nationwide Mut. Ins. Co. v. McDermott*, No. 12-11863, 2013 WL 3732874, at *11 (E.D. Mich. July 15, 2013) (holding that the innocent co-insured doctrine only applies to "intentional conduct (intentional wrongdoing or fraud.")); *Borman v. State Farm Fire & Cas. Co.*, 521 N.W.2d 266, 268 (Mich. 1994) (recognizing that courts have enforced policies against innocent co-insureds when there is "fraud, concealment, or intentional acts" by any other insured).

Accordingly, this Court finds that the innocent co-insured doctrine is inapplicable to this issue. The issue before the Court is the failure of Niko and Samantha Durasevic to submit to EUOs—a condition precedent to receiving coverage. Failure to submit to an EUO is not an intentional wrongdoing or fraud, but a failure to fulfill a condition precedent to a contract. *See Yeo v. State Farm*

---

[3] At the motion hearing held on the parties' motions, Plaintiffs' attorney conceded that no case law besides *Gordon* holds that failure to submit to an EUO—if required by the insurance contract—does not preclude recovery.

*Ins. Co.*, 555 N.W.2d 893, 895 (Mich. 1996) (holding that "[a]n insurance policy condition requiring an [EUO] before an insured has the right to bring an action is a valid condition precedent and as a general rule enforceable, and one who without cause refuses to submit to such an examination should be precluded from maintaining an action on the policy.").

Michigan courts follow the substantial performance rule, including in relation to insurance contracts. Under this rule, "[a] contract is substantially performed when all the essentials necessary to the full accomplishment of the purposes for which the thing contracted has been performed with such approximation that a party obtains substantially what is called for by the contract." *Aleksov v. Auto Owners Ins. Co.*, No. 338264, 2018 WL 2222734, at *3 (Mich. Ct. App. May 15, 2018) (quoting *Gibson v. Group Ins. Co. of Mich.*, 369 N.W.2d 484, 486 (Mich. Ct. App. 1985)). A court may overlook minor deviations from a contract, but if "deviations or alterations are such as would essentially change the terms of performance, they will be considered as a failure of performance." *Id.* "In addition, authority exists for the proposition that insurance contracts are not void due to misrepresentations or false statements where the insurer was not prejudiced." *M.C.W., Inc. v. Hamilton Mut. Ins. Co.*, No. 233480, 2003 WL 193567, at *2 (Mich. Ct. App. Jan. 28, 2003) (quoting *Gibson*, 369 N.W.2d at 486).

Plaintiffs argue that whether there was substantial compliance is a question for the jury. Dkt. No. 28, pg. 3 (Pg. ID 427). However, the Michigan Court of Appeals decided in *Aleksov* that the plaintiffs did not substantially comply with the contract. *Aleksov*, No. 338264, 2018 WL 2222734, at \*3. Therefore, it is clear that courts are able to decide whether a contract was substantially performed in some contexts. The Plaintiffs in *Aleksov* did not comply at all with the condition precedent of submitting a sworn proof of loss within the applicable time period. *Id.* The court considered the policy objectives underlying the proof of loss requirement: "(1) allowing the insurer an opportunity to investigate the loss; (2) allowing the insurer to estimate its rights and liabilities; and (3) preventing fraud." *Id.* The court reasoned that the third purpose of preventing fraud was completely unrealized without the sworn proof of loss. *Id.* Therefore, failing to submit the proof of loss was a major defect. *Id.*

The Michigan Court of Appeals has held that failure to report a hit and run accident to the police within 24 hours—in violation of an insurance policy—still constituted substantial compliance. *Camaj v. Home Owners Ins. Co.*, No. 290664, 290711, 2010 WL 3385992, at \*5 (Mich. Ct. App. Aug. 24, 2010). The court reasoned that the accident occurred when it was dark outside and there were no witnesses to the accident. *Id.* at \*6. Therefore, a police investigation would have

been of limited usefulness; the insurance company could not demonstrate the prejudice that it faced from plaintiff's non-compliance. *Id.*

In this case, Defendant suspected that Plaintiffs' insurance claim may have been fraudulent. Dkt. No. 29, pg. 13 (Pg. ID 467). Defendant suspects that Niko Durasevic intentionally set fire to the house. Dkt. No. 5-2, pg. 9 (Pg. ID 95). Therefore, the EUO testimony of Niko Durasevic and potentially his wife, Samantha Durasevic, was significant to Defendant's investigation. Unlike the failure to fully comply in *Camaj*, the failure to comply in this case did prejudice the Defendant. Defendant was not able to fully investigate and discover the cause of the accident because of Niko and Samantha's failures to submit to EUOs. Therefore, this Court finds that although Plaintiffs submitted to EUOs, the failure of Niko and Samantha to submit to EUOs does not constitute substantial compliance with the conditions precedent of the insurance contract. This Court holds that Plaintiffs did not substantially comply with their insurance policy because not all insureds submitted to EUOs.

### 3. Argument Three

Third, Defendant argues that it is entitled to summary judgment because Plaintiffs' insurance policy requires insured persons to cooperate with Defendant's investigation and produce requested documentation. Dkt. No. 25, pg. 2 (Pg. ID

308). Defendant asserts that Plaintiffs breached the cooperation provision by failing to produce certain financial documentation that Defendant requested. *Id.*

Under Michigan law, courts have found information relating to the insureds' finances to be relevant to claims administration. *Smith v. Mich. Basic Prop. Ins. Co.*, 490 N.W.2d 864, 869–70 (Mich. 1992). This Court has previously considered a similar issue in *Musleh v. State Farm Fire and Casualty Company*. No. 10-11344, 2010 WL 11205733, at *3 (E.D. Mich. Dec. 13, 2010). In *Musleh*, the insurance company suspected that the plaintiffs' claim may have been fraudulent. *Id.* The plaintiffs failed to produce documents to the insurance company, such as complete copies of their federal income tax returns and Michigan income tax returns for the requested years. *Id.* The plaintiffs never stated that they were unable to deliver the requested documents. *Id.* Rather, the plaintiffs agreed on several occasions to provide the documents. *Id.* Therefore, this Court held that the plaintiffs failed to substantially comply with their contractual obligations and were barred from pursuing their action. *Id.*

The Michigan Court of Appeals held that questions of fact concerning substantial compliance precluded summary judgment in *M.C.W., Incorporated. v. Hamilton Mutual Insurance Company*. No. 233480, 2003 WL 193567, at * 2. In *M.C.W.*, the plaintiffs submitted to EUOs, answered the questions posed to them, and produced numerous documents. *Id.* However, Defendants alleged that the

plaintiffs failed to disclose information about a fire investigation expert that they had previously hired. *Id.* Plaintiffs also failed to produce audio tapes and fire scene photographs. *Id.* However, the defendants failed to cite any EUO questions or document requests that specifically touched on investigators that the plaintiffs may have hired or about photographs of the fire scene. *Id.* Therefore, the court held that it could not be said as a matter of law that the failure to produce the information and materials constituted a failure to substantially comply with the conditions precedent. *Id.*

Here, Defendant suspected that Plaintiffs' claim may have been fraudulent. Dkt. No. 29, pg. 13 (Pg. ID 467). Unlike the defendant in *M.C.W.*, Defendant clearly requested tax returns, bank statements, phone records, and Facebook archives from Plaintiff as a part of its investigation. Dkt. No. 25, pg. 12 (Pg. ID 318). Plaintiff Doka Durasevic, along with Plaintiff's lawyer, agreed to provide Defendant with the requested tax information during his EUO. Dkt. No. 25-4, pg. 6 (Pg. ID 411). Plaintiffs also signed authorizations for release of the requested information. Dkt. No. 24-8, pg. 2 (Pg. ID 306). However, Plaintiffs have not provided Defendant with the requested documents. Therefore, like this Court found in *Musleh*, this Court holds that Plaintiffs did not substantially comply with the insurance contract because they did not submit the requested documents to Defendant.

In conclusion, this Court holds that questions of material fact exist concerning the applicability of the vacancy exclusion. However, this Court finds that Plaintiffs failed to substantially comply with the provisions of the insurance policy contract. Due to Plaintiffs' failure to comply, Defendants are not liable to provide coverage for the second fire. Consequently, this Court will grant Defendant's Motion for Summary Judgment.

## B. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs' Motion for Partial Summary Judgment requests that this Court enter summary judgment as to liability in its favor. Dkt. No. 24, pg. 14 (Pg. ID 193). Plaintiffs' Motion for Partial Summary Judgment also requests that this Court strike several of Defendant's affirmative defenses. *See generally id.* Plaintiffs assert that this Court should dismiss Defendant's affirmative defenses 25–28 and 32–36. *Id.* This Court has granted summary judgment in favor of Defendant. Therefore, Plaintiffs' Motion for Partial Summary Judgment is denied as moot.

## V. Conclusion

For the reasons discussed herein, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiffs' Motion for Partial Summary Judgment.

SO ORDERED.


Dated:        July 9, 2018

                                         s/Gershwin A. Drain
                                         HON. GERSHWIN A. DRAIN
                                         United States District Court Judge